

**FILED**

**SEP 3 0 2013**

CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| MICHELLE D. ROSE, | ) | CIV. 12-5027-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner, Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

### INTRODUCTION

Plaintiff Michelle D. Rose filed a complaint against the Commissioner

of Social Security[1] appealing from an administrative law judge's (ALJ)

decision denying plaintiff social security disability ("SSD") benefits.[2]

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Fed. R. Civ. P. 25(d), Ms. Colvin is automatically substituted for Michael J. Astrue as the defendant in all pending social security cases.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]Ms. Rose filed an application for supplemental security income ("SSI") benefits on February 8, 2008.  (Administrative Record at p. 218) (hereafter "AR at p.___.").   The claim was denied because of non-excludable excess resources.  (AR at p. 9).  Ms. Rose did not appeal from the denial of the SSI claim.  Id.  To the extent Ms. Rose chose not to challenge SSI's decision, that challenge is waived.  Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) ("[F]ailure to raise the argument at the agency level 'ordinarily prevents a party from raising it in judicial proceeding.'") (citing Weikert v. Sullivan, 977 F.2d 1249, 1254 (8th Cir. 1992) (bracketing omitted); Harwood v. Apfel, 186 F.3d 1039, 1043 (8th Cir. 1999) (an issue not raised with the Appeals Council is not reviewable in district court).

(Docket 1). Defendant denies plaintiff is entitled to benefits. (Docket 8). The court issued a briefing schedule requiring the parties to file a joint statement of material facts ("JSMF"). (Docket 11). The parties filed their JSMF. (Docket 14). For the reasons stated below, plaintiff's motion to reverse the decision of the Commissioner (Docket 15) is denied and the defendant's motion to affirm the ALJ's decision (Docket 19) is granted.

## FACTUAL AND PROCEDURAL HISTORY

The parties' JSMF (Docket 14) is incorporated by reference. Further recitation of salient facts is included in the discussion section of this order. On December 28, 2007, Ms. Rose applied for SSD benefits alleging that she became unable to work as of October 20, 2006. Id. at ¶ 1. Ms. Rose's case was heard by the first ALJ on February 29, 2010. Id. at ¶ 5. Because that ALJ left the Office of Disability Adjudication and Review before issuing a decision, a second ALJ held a hearing on August 23, 2010, on Ms. Rose's claim. Id. On October 14, 2010, the second ALJ issued an unfavorable decision to Ms. Rose, finding she was capable of performing past relevant work as a receptionist. Id. at ¶ 6. Following an appeal by Ms. Rose, on March 26, 2012, the Appeals Council declined to review the ALJ's decision. The ALJ's decision constitutes the final decision of the Commissioner of the Social Security Administration. (Dockets 1 at ¶ I & 8 at ¶ 1). It is from this decision which Ms. Rose timely appeals. 42 U.S.C. § 405(g).

2

## STANDARD OF REVIEW

The Commissioner's findings must be upheld if they are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); <u>Choate v. Barnhart</u>, 457 F.3d 865, 869 (8th Cir. 2006); <u>Howard v. Massanari</u>, 255 F.3d 577, 580 (8th Cir. 2001).  The court reviews the Commissioner's decision to determine if an error of law was committed.  <u>Smith v. Sullivan</u>, 982 F.2d 308, 311 (8th Cir. 1992).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  <u>Cox v. Barnhart</u>, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

The review of a decision to deny disability benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision."  <u>Reed v. Barnhart</u>, 399 F.3d 917, 920 (8th Cir. 2005) (quoting <u>Haley v. Massanari</u>, 258 F.3d 742, 747 (8th Cir. 2001)).

It is not the role of the court to re-weigh the evidence and, even if this court would have decided the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is

3

based on substantial evidence. Guilliams v. Barnhart, 393 F.3d 798, 801
(8th Cir. 2005). A reviewing court may not reverse the Commissioner's
decision " 'merely because substantial evidence would have supported an
opposite decision.' " Reed, 399 F.3d at 920 (quoting Shannon v. Chater, 54
F.3d 484, 486 (8th Cir. 1995)).

## DISCUSSION

"Disability" is defined as the inability "to engage in any substantial
gainful activity by reason of any medically determinable physical or mental
impairment [or combination of impairments] which can be expected to result
in death or which has lasted or can be expected to last for a continuous
period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Administration established a five-step sequential
evaluation process for determining whether an individual is disabled.
20 CFR §§ 404.1520(a)(4). If the ALJ determines a claimant is not disabled
at any step of the process, the evaluation does not proceed to the next step
as the claimant is not disabled. Id. The five-step sequential evaluation
process is:

(1) whether the claimant is presently engaged in a "substantial
gainful activity"; (2) whether the claimant has a severe
impairment—one that significantly limits the claimant's physical
or mental ability to perform basic work activities; (3) whether the
claimant has an impairment that meets or equals a presumptively
disabling impairment listed in the regulations (if so, the claimant
is disabled without regard to age, education, and work
experience); (4) whether the claimant has the residual functional

4

> capacity to perform . . . past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform.

Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998).  The ALJ applied

the five-step sequential evaluation required by the Social Security

Administration regulations.  (Docket 14 at ¶¶ 9-22).

## STEP ONE

At step one, the ALJ determined Ms. Rose had not been engaged in

substantial gainful activity since October 20, 2006.  (Docket 14 at ¶ 9);

20 CFR §§ 404.1520(b).

## STEP TWO

At step two, the ALJ must decide whether the claimant has a

medically determinable impairment that is severe or a combination of

impairments that are severe.  20 CFR §§ 404.1520(c).  At Step Two, the ALJ

found Ms. Rose's severe impairments were obesity, depression NOS,

diabetes mellitus, heel spurs, low back pain, and history of alcohol abuse.

(Docket 14 at ¶ 10).

Ms. Rose argues "[t]he ALJ failed to identify as 'severe' these disease

entities: diabetic neuropathy, diabetic gastroparesis,[3] gallbladder disease,

---

[3]" 'Gastroparesis,' also called delayed gastric emptying, is a disorder that slows or stops the movement of food from the stomach to the small intestine. . . ."  (Docket 14 at ¶ 25).

5

edema of feet and sometimes hands, peripheral arterial disease with claudication, gastroc equinus deformity[4] with plantar fasciitis,[5] and cataracts with episodes of blurred vision associated with elevated blood sugar levels." (Docket 16 at p. 25). Plaintiff argues "[e]ach of these disorders is a complication of diabetes or obesity or both combined, and constitutes a separate disease entity with particular symptoms and limitations." Id. at pp. 25-26. Ms. Rose argues the ALJ treated these "impairments as temporary occurrences." (Docket 21 at p. 2). Ms. Rose asserts this error was compounded in two ways when: (1) "[t]he ALJ - having failed to recognize the severity and duration of Rose's additional severe impairments, or their combined effect on symptoms and limitations, assessed credibility without reference to the additional impairments [];" and "[t]he inadequate Step Two list of impairments and inadequate credibility assessment then informed the crucial RFC assessment, in which the ALJ failed to address SSR 96-8p (RFC ruling) factors and failed to consider Rose's additional impairments in combination with those he found severe." Id.

---

[4] " 'Equinus contracture,' is the inability to bring the foot up to a neutral position. . . ." (Docket 14 at ¶ 24).

[5] " 'Plantar fasciitis' is inflammation of the thick tissue on the bottom of the foot." (Docket 14 at ¶ 28).

6

The parties' JSMF acknowledges some of these conditions were

controlled by medication, either directly or through control of Ms. Rose's

blood sugar levels, or surgery:

> Diabetic Gastroparesis -Ms. Rose "said that the [abdominal]
> pain was worse after eating." (AR at p. 16). Her "probable
> diabetic gastroparesis . . . was responding to Reglan . . . ."
> (Docket 14 at ¶ 90). She takes Reglan four times a day for this
> condition. Id. at ¶ 98.
>
> Gallbladder Disease - Ms. Rose's gallbladder was removed "due
> to [her] diabetes." (Docket 14 at ¶ 190). This surgery occurred
> in October of 2008.[6] Id.
>
> Edema - In December of 2007, Ms. Rose's foot swelling was
> rated "+3 to +4" and hand edema at "+2 to +3." (Docket 14 at
> ¶ 112). In March 2009, with medications "[s]he had nonpitting
> edema but sensation was intact." Id. at ¶ 145. In April of
> 2009, Ms. Rose "had sensation in the soles of her feet and no
> edema." Id. at ¶ 146. When pitting edema returned, Dr.
> Johnson prescribed "compression stockings for edema." Id. at
> ¶ 148. Even when pitting edema returned, Ms. Rose had "full
> range of motion without pain of her lower extremities." Id. at ¶ 169.
>
> Peripheral Arterial Disease - In August of 2009, Dr. Tuma
> operated to address Ms. Rose's bilateral peripheral arterial
> disease. Id. at ¶ 153. Ms. Rose reported this procedure was
> "beneficial in reducing her leg fatigue . . . ." Id. at ¶ 154.
>
> Gastroc Equinus Deformity with Plantar Fasciitis - In October of
> 2009, Ms. Rose had surgery to address her plantar fasciitis and
> gastroc equinus deformity of her right heel. Id. at ¶¶ 158 &
> 159. In December of 2009, Dr. Johnson reported Ms. Rose was
> not following post-surgery care recommendations but felt her

---

[6]Ms. Rose's brief fails to acknowledge this surgery. (Docket 16 at p. 16).
Ms. Rose "had a laparoscopic cholecystectomy (gallbladder surgery) . . . in
October 2008." (AR at p. 16). There is no indication in the record Ms. Rose
had any gallbladder disease complications following this surgery.

pain "had diminished . . . . [and] felt that the surgery had been successful." Id. at ¶ 164. "Overall pain was 0/10." Id. at ¶ 162. Ms. Rose was to have her left heel surgery "after her right leg has healed." Id. at ¶ 161.

Catracts with blurred vision - Ms. Rose "had bilateral cortical cataracts. The glasses she had gotten recently seemed to be 'getting weak already'. . . . But with variable blood sugars, prescription change was not recommended." Id. at ¶ 80. "On January 22, 2007, Rose . . . complained that her distance vision was worse, but exam showed distance vision to be 20/20." Id. at ¶ 99. "She could see well enough to see what was on the computer. . . . Vision fluctuated: 'When it's really hard, my eyes really get blurry.' . . . This occurred 'Maybe once or twice a week maybe . . . [w]hen they [blood sugars] really get high,' meaning '[b]etween 400 and 500.' . . . This would last '[a]n hour or two.' " Id. at ¶ 242.

The ALJ discussed a number of these additional physical conditions:

Diabetic Neuropathy -sometimes referred to as "peripheral neuropathy." Ms. Rose "takes Neurontin for her neuropathy." (AR at p. 16). The Neurontin "helps some." Id. at p. 17.

Edema - Ms. Rose "was assessed with . . . pitting edema in July 2009." Id. at p. 16.

Peripheral arterial disease - Ms. Rose "was diagnosed with peripheral artier [sic] disease. . . . There was complete occlusion of the popliteal artery on the right. She had surgery on August 11, 2009 with angioplasty on the right and left and a stent placed in the right femoral artery . . . . Once she had healed, Dr. Tuma anticipated fixing her left leg . . . ." Id. at p. 15.

Gastro equinos deformity with plantar faciitis - "The claimant had surgery on her left [sic] foot on October 23, 2009. She underwent a plantar fasciotomy resection of the right heel spur and a gastroc resection to treat the gastric equinus. The claimant was very happy with the procedure . . . ." Id. at p. 16.

8

Cataracts with blurred vision - "The claimant uses a laptop to check her email and Facebook. She also watches television during the day." Id. at p. 17.

The regulations describe "severe impairment" in the negative. "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 CFR § 404.1521(a). Thus, a severe impairment is one which significantly limits a claimant's physical or mental ability to do basic work activities.

"Basic work activities" are defined to "mean the abilities and aptitudes necessary to do most jobs." Id. at § 404.1521(b). The regulations explain those "abilities and aptitudes" involve:

(1)    Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2)    Capacities for seeing, hearing, and speaking;

(3)    Understanding, carrying out, and remembering simple instructions;

(4)    Use of judgment;

(5)    Responding appropriately to supervision, co-workers and usual work situations; and

(6)    Dealing with changes in a routine work setting.

Id.

The ALJ properly identified and considered to the extent he deemed appropriate Ms. Rose's non-severe medical conditions and impairments.

Her diabetic related non-severe conditions are more properly labeled as transitory as opposed to temporary—that is, the level of each condition fluctuates with Ms. Rose's varying blood sugar levels. Plaintiff's first objection to the ALJ's resolution of Ms. Rose's non-severe impairments is without merit. The impact, if any, of Ms. Rose's non-severe impairments on the ALJ's credibility determination of Ms. Rose and the RFC determination will be discussed later in this order.

**STEP THREE**

At step three, the ALJ determines whether claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 ("Appendix 1"). 20 CFR §§ 404.1520(d), 404.1525, and 404.1526. If a claimant's impairment or combination of impairments meets or medically equals the criteria for one of the impairments listed and meets the duration requirement of 20 CFR § 404.1509, the claimant is considered disabled.

The ALJ determined Ms. Rose did not have an impairment or combination of impairments which met or were medically equal to one of the impairments listed in Appendix 1. (Docket 14 at ¶ 11). Plaintiff did not object to the ALJ's determination at Step Three.

10

## STEP FOUR

Before considering step four of the evaluation process, the ALJ is required to determine a claimant's residual functional capacity ("RFC"). 20 CFR §§ 404.1520(e).  RFC is a claimant's ability to do physical and mental work activities on a sustained basis despite any limitations from her impairments.  20 CFR §§ 404.1545(a)(1).  In making this finding, the ALJ must consider all of the claimant's impairments, including those which are not severe.  20 CFR §§ 404.1545(e).  All of the relevant medical and non-medical evidence in the record must be considered.  20 CFR §§ 404.1520(e) and 404.1545.

"The ALJ should determine a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006) (quoting Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004)); see also Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007) (because RFC is a medical question, the ALJ's decision must be supported by some medical evidence of a claimant's ability to function in the workplace, but the ALJ may consider non-medical evidence as well); Guilliams, 393 F.3d at 803 ("RFC is a medical question, and an ALJ's finding must be supported by some medical evidence.").  The ALJ "still 'bears the primary responsibility for assessing a claimant's

11

residual functional capacity based on all relevant evidence.'" Id. (quoting
Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000)).

"In determining RFC, the ALJ must consider the effects of the
combination of both physical and mental impairments." Stormo v.
Barnhart, 377 F.3d 801, 807 (8th Cir. 2004) (citing Baldwin v. Barnhart,
349 F.3d 549, 556 (8th Cir. 2003)). As stated earlier in this discussion, a
severe impairment is one which significantly limits an individual's physical
or mental ability to do basic work activities. 20 CFR § 404.1521(a).

Before determining Ms. Rose's RFC, plaintiff argues the ALJ failed to
comply with the legal standards for evaluation of her credibility. (Docket 16
at p. 26). Plaintiff argues the ALJ failed to properly reference and then
apply the Polaski[7] credibility factors to his analysis of Ms. Rose's testimony.
Id. at pp. 26-35. Plaintiff fails to acknowledge the Polaski factors are
included in the Social Security regulations used by the ALJ. See 20 CFR
§ 404.1529.

The ALJ did work through the § 404.1529 analysis. The ALJ
"considered all symptoms and the extent to which these symptoms can
reasonably be accepted as consistent with the objective medical evidence
and other evidence, based on the requirements of 20 CFR 404.1529 and

---

[7]Polaski v. Heckler, 751 F.2d 943, 948-50 (8th Cir. 1984).

12

SSRs 96-4p and 96-7p." (AR at p. 15). The § 404.1529 credibility analysis

includes consideration of a claimant's pain:

> Factors relevant to your symptoms, such as pain, which we will
> consider include:
>
> > (i)    Your daily activities;
> >
> > (ii)   The location, duration, frequency, and
> >        intensity of your pain or other
> >        symptoms;
> >
> > (iii)  Precipitating and aggravating factors;
> >
> > (iv)   The type, dosage, effectiveness, and side
> >        effects of any medication you take or
> >        have taken to alleviate your pain or other
> >        symptoms;
> >
> > (v)    Treatment, other than medication, you
> >        receive or have received for relief of your
> >        pain or other symptoms;
> >
> > (vi)   Any measures you use or have used to
> >        relieve your pain or other symptoms
> >        (e.g., lying flat on your back, standing for
> >        15 to 20 minutes every hour, sleeping on
> >        a board, etc.); and
> >
> > (vii)  Other factors concerning your functional
> >        limitations and restrictions due to pain
> >        or other symptoms.

20 CFR § 404.1529(c)(3).

    "The ALJ was required to make an express credibility determination

explaining why he did not fully credit [claimant's] complaints." Lowe v.

Apfel, 226 F.3d 969, 971 (8th Cir. 2000). That finding must be "adequately

explained and . . . supported by the record as a whole." Id. at p. 972. The
ALJ is "not required to discuss methodically each Polaski consideration, so
long as he acknowledged and examined those considerations before
discounting [a claimant's] subjective complaints." Id. The ALJ made no
specific findings regarding the Polaski factors. However, "[t]he ALJ is not
required to discuss each Polaski factor as long as the analytical framework
is recognized and considered." Tucker v. Barnhart, 363 F.3d 781, 783 (8th
Cir. 2004).

The ALJ found a number of inconsistencies between Ms. Rose's
subjective complaints of pain, her work activities, and activities of daily
living. See Docket 14 at ¶¶ 13-19. Despite testimony she can only sit for
minutes at a time and stand for slightly longer time periods, the record
indicates otherwise:

> Ms. Rose reports as of January 17, 2009, "[s]he was working
> four days a week from 9:30 a.m. to 6:40 p.m. Id. at ¶ 138;
>
> Since 2003 she had been working at a bar in Box Elder 10-20
> hours a week. Id. at ¶ 142;
>
> She "had spoken with her boss about increasing her hours, but
> he had been unable to, and she was looking for alternate
> employment. Id. at ¶ 143;
>
> "She is a cocktail waitress and has been working her usual full
> time hours." Id. at ¶ 162;
>
> "She worked usually nine hours a day . . . . tended bar, waited
> tables, cooked, did everything, ran poker, and did data entry,
> 'computer things.' She ran the Texas Hold 'Em tournament

14

> three nights a week . . . . She played poker. . . . Sundays and
> Wednesdays I play with them so basically I'm getting paid for
> doing the data entry for the state . . . . The games lasted two to
> six hours depending on the number of players." Id. at 223; and
> "She could see well enough to see what was on the computer."
> Id. at 242.

Her testimony is also inconsistent with the testimony of her son.

> [S]he could take care of her personal needs and would care for
> him and the pets . . . . She would socialize with others, cook,
> vacuum, do dishes, and do laundry. He would do the yard work.
> [She] could drive a vehicle and would go out alone. She took care
> of her own finances. She watched TV and would socialize by going
> out with others. She had problems with standing, walking, and
> stair climbing because of her heels aching. [She] could follow
> written and spoken instructions. . . .

Id. at ¶ 16.

The ALJ properly considered Ms. Rose's testimony and found it less

than fully credible in light of the entire record. Gonzales v. Barnhart, 465

F.3d 890, 894 (8th Cir. 2006). The ALJ's findings "adequately explain[]" the

decision to give less credibility to Ms. Rose's testimony and those findings

are "supported by the record as a whole." Lowe, 226 F.3d at 971-72. The

court is to "defer to an ALJ's credibility finding as long as the ALJ explicitly

discredits a claimant's testimony and gives a good reason for doing so."

Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (internal citation and

quotation marks omitted).

After determining Ms. Rose's credibility, the ALJ arrived at an RFC for

use in step four.

15

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except stand and/or walk limited to 2 hours in an 8-hour workday; no climbing of ladders/ropes/scaffolds, and occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching, or crawling; no manipulative, visual, or communicative limitations; avoid concentrated exposure to extreme heat, cold, humidity, wetness, vibration, fumes, odors, dusts, gases, poor ventilation, etc., and hazards; mild limitations in her ability to understand, remember; and carry out complex instructions, and ability to make judgments on complex work-related decisions; and mild limitations in her ability to interact appropriately with the public, supervisors, and co-workers and to respond appropriately to usual work situations and to changes in a routine work setting.

(Docket 14 at ¶ 12).

Ms. Rose objects to the RFC arguing "[t]he ALJ failed to factor in limitations associated with gastroparesis, gallbladder disease, peripheral arterial disease, peripheral neuropathy of upper and lower extremities, edema of feet and hands, equinus deformity, plantar fasciitis, and visual impairment." (Docket 16 at p. 36). Ms. Rose claims the ALJ "should have called an internist or endocrinologist to explain the effects, singly and combined, of diabetes, obesity, gastroparesis (including the difficulty in controlling hyperglycemia in the presence of gastroparesis), peripheral neuropathy, peripheral arterial disease, edema of feet and hands, equinus deformity, heel spurs, plantar fasciitis, gallbladder disease, and visual impairment – and to opine the date of onset of each of these resulting disorders, based on Rose's symptoms and limitations predating the

16

dates of diagnoses." Id. at p. 37 (referencing Grebenick v. Chater, 121 F.3d 1193, 1200-01 (8th Cir. 1997)).

The onset of Ms. Rose's medical conditions are not critical to the analysis before the court. Grebenick was concerned with the date of onset of a medical condition so as to bring the claimant's claim of disability within the time frame required to have coverage. Grebenick, 121 F.3d at 1201 ("we ask whether the evidence is ambiguous regarding the possibility that the onset of her disability occurred before the expiration of her insured status."). The ALJ specifically found Ms. Rose suffered from a number of severe impairments and those conditions existed during the period of her insured status. (AR at p. 12). Therefore, plaintiff's reliance on Grebenick is misplaced.

Plaintiff next objects to the ALJ's decision because of the "failure [of the agency] to operationalize its new obesity ruling after eliminating the Listing for Obesity." (Docket 16 at p. 38). "SSA failed to establish a method to operationalize SSR 02-01p[8] and provide a basis for adjudicators to consider the interactive and incremental effects of obesity on other impairments." Id. at p. 39.

SSR 02-01p declares that in determining step 4 of the sequential process an ALJ should consider the following:

---

[8]67 Fed. Reg. 57859-02, 2002 WL 31026506 (Sept. 12, 2002).

17

Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

The effects of obesity may not be obvious. . . . Obesity may also affect an individual's social functioning.

An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. . . . .

The combined effects of obesity with other impairments may be greater than might be expected without obesity. . . .

(SSR 02-01p at ¶ 8). The evidence shows the ALJ adequately considered the entire record, including Ms. Rose's obesity and its affect on her physical abilities. (AR at pp. 12-17). While Ms. Rose is obese, she retains the "ability to perform routine movement and necessary activity within the work environment" as reflected by her part-time bartending job and working the poker tournaments several nights a week. (SSR 02-01p at ¶ 8). Ms. Rose's

18

testimony supports the conclusion she can perform light work within the

parameters of the RFC established by the ALJ.  Light work is defined by

Social Security Regulations as:

> Light work involves lifting no more than 20 pounds at a time with
> frequent lifting or carrying of objects weighing up to 10 pounds.
> Even though the weight lifted may be very little, a job is in this
> category when it requires a good deal of walking or standing, or
> when it involves sitting most of the time with some pushing and
> pulling of arm or leg controls. To be considered capable of
> performing a full or wide range of light work, you must have the
> ability to do substantially all of these activities. If someone can do
> light work, we determine that he . . . can also do sedentary work,
> unless there are additional limiting factors such as loss of fine
> dexterity or inability to sit for long periods of time.

20 CFR § 404.1567(b).

Ms. Rose finally argues the ALJ failed to properly consider the

consequences of her "medical absenteeism."  (Docket 16 at p. 41).  The court

agrees with the Commissioner's assertion that "[p]laintiff's argument is

premised on the unsupported and speculative idea that each time she went

to the doctor, she would miss a day of work."  (Docket 20 at p. 21).

Plaintiff's argument is without merit.

The court finds substantial evidence in this record which a reasonable

mind might accept as adequate to support the ALJ's decision on Ms.

Rose's RFC and her ability to perform past relevant work as a receptionist.

(AR at p. 18).  Because Ms. Rose can perform her past relevant work, she

was not disabled.  20 CFR §§ 404.1520(f).  "[The ALJ] will compare our

[RFC] assessment . . . with your past relevant work . . . . If you can still do this kind of work, [the ALJ] will find that you are not disabled." Id.

The court finds substantial evidence in the record as a whole supports the Commissioner's decision. Choate, 457 F.3d at 869. The court further concludes no error of law was committed and the decision of the Commissioner should be affirmed. Smith, 982 F.2d at 311.

## ORDER

Based on the above analysis, it is hereby

ORDERED that plaintiff's motion (Docket 15) is denied.

IT IS FURTHER ORDERED that defendant's motion (Docket 19) is granted.

IT IS FURTHER ORDERED that pursuant to sentence four of 42 U.S.C. § 405(g) the decision of the Commissioner is affirmed.

Dated September 30, 2013.

BY THE COURT:

JEFFREY L. VIKEN
CHIEF JUDGE

20